**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| ECOFACTOR, INC.,<br><br>         Plaintiff,<br>    v.<br><br>GOOGLE LLC,<br><br>         Defendant. | Case No.: **6:22-cv-00032**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST
GOOGLE LLC**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff EcoFactor, Inc. ("Plaintiff" or "EcoFactor") makes the following allegations against Defendant Google LLC ("Defendant"):

**INTRODUCTION**

1.      This complaint arises from Defendant's unlawful infringement of the following United States patents owned by EcoFactor: U.S. Patent No. 8,131,497 ("'497 Patent"); U.S. Patent No. 8,423,322 ("'322 Patent"); U.S. Patent No. 8,498,753 ("'753 Patent"); and U.S. Patent No. 10,018,371 ("'371 Patent") (collectively the "Asserted Patents"). EcoFactor owns all right, title, and interest in each of the Asserted Patents.

2.      EcoFactor is a privately held company, having its principal place of business at 441 California Avenue, Number 2, Palo Alto, CA 94301. EcoFactor was founded in 2006 and is headquartered in Palo Alto, California. EcoFactor is a leader in smart home energy management services. EcoFactor delivers smart home energy management services that improve energy efficiency, reduce energy bills and vastly increase demand response efficacy – all while maintaining consumer comfort. EcoFactor's patented big-data analytics and machine learning

algorithms collect and process massive amounts of residential data – including home thermodynamics, family comfort preferences and schedules, plus external data such as weather – to continually monitor, adapt and learn for optimum energy savings. The company provides homeowners significant cost savings and energy usage benefits. EcoFactor's award-winning service has been offered through channel partners such as utilities, energy retailers, broadband service providers and HVAC companies.

3.      EcoFactor transformed how homes use energy by applying advanced analytics to connected devices in the home. EcoFactor developed a suite of software known as the "EcoFactor Platform" that incorporates EcoFactor's patented data analytics and machine learning algorithms, as well as EcoFactor's award-winning smart HVAC control technologies. The EcoFactor Platform is software that runs on servers, including cloud servers, in the United States, and provides service to customers in the United States. The source code of the EcoFactor Platform, including for example the platform, quant, and mobile application source code, that comprises the EcoFactor Platform was designed by, created by, and is continuously maintained and improved by EcoFactor employees working in the United States. The EcoFactor Platform actively manages thermostats on occupants' behalf in intelligent ways that improve comfort while helping them save time, energy and money. Utilities, home service providers and homeowners rely on EcoFactor for demand response, energy efficiency, and HVAC performance monitoring services. The EcoFactor Platform includes the software that practices EcoFactor's patents on these features. For example, the EcoFactor Platform includes EcoFactor's patented techniques for monitoring the health and performance of HVAC systems over time, smart thermostat scheduling to improve energy savings and optimize comfort for occupants, and thermodynamic modeling of the user's home and HVAC system to enable dynamic pre-cooling and pre-heating to further improve comfort, save energy, or

both, by creating comfortable schedules that also shift energy usage out of periods of peak energy demand.

4.      The patented innovations at issue in this action were invented by EcoFactor engineers and researchers. EcoFactor has played a significant role in the development and advancement of such improvements to energy management technology—and the domestic market for them. EcoFactor has expended tens of millions of dollars of research and development and technical services and support in the United States. In recent years, an explosion of imported products that infringe EcoFactor's innovative Asserted Patents has significantly eroded EcoFactor's market standing. This infringement action is about several patented improvements to smart thermostat systems, smart HVAC systems, and smart HVAC control systems—which took years of research and millions of dollars in U.S. investments to develop, and which are infringed by Defendant's accused products.

## **PARTIES**

5.      Plaintiff EcoFactor is a privately held company, having its principal place of business at 441 California Avenue, Number 2, Palo Alto, CA 94301. EcoFactor was founded in 2006 and is headquartered in Palo Alto, California. EcoFactor is the sole owner of all right, title, and interest in each Asserted Patents.

6.      Google LLC is a wholly-owned subsidiary of Alphabet, Inc, and a Delaware limited liability company with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google LLC operates a division named Google Nest ("Nest") which, on information and belief, designs and manufactures, among other things, smart Thermostats. Google LLC may be served with process through its registered agent, the Corporation Service Company, at 211 East. 7th Street, Suite 620, Austin, Texas 78701. Google LLC is registered to do business

in the State of Texas and has been since at least November 17, 2006.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the Asserted Patents.

9.      Venue is proper in this District under 28 U.S.C. § 1400(b). Upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents. Defendant has at least one regular and established place of business in the District. For example, Google invested $20 million to build a corporate office at 500 West 2nd Street, Austin, Texas 78701. Further, this District has a significant interest in this case. In addition to Defendant's long-standing presence in this District, Defendant's employees in this District have relevant knowledge about the accused products and services, including Defendant's software engineers as well as Defendant's employees responsible for maintaining energy industry partnerships with local energy companies who collaborate with Defendant to offer "smart" thermostat products and services to customers in this District, including

products and services that are accused of infringing the Asserted Patents.

## THE TECHNOLOGY AND PRODUCTS AT ISSUE

10.     The products accused of infringing one or more of the Asserted Patents are smart thermostat systems, smart HVAC systems, smart HVAC control systems, and all components (including accessories) thereof offered for sale by Defendant.

11.     The Accused Products include thermostat systems that connect to and control an HVAC system, they include smart HVAC systems, and they include components of such systems such as, for example, hubs, panels, and remote sensors. Defendant's smart thermostat devices communicate over a network with other devices and systems offered by Defendant. Defendant's smart thermostat devices connect to the network managed by Defendant via the Internet. For example, the smart thermostats connect to Defendant's networked servers and data centers, online interfaces, and related accessories.

12.     When connected as designed, the Accused Products form a smart thermostat system, smart HVAC system, and/or smart HVAC control system. Defendant's smart thermostat systems are "smart" because they are designed to connect to Defendant's servers and data centers (including, e.g., cloud-based servers and backend support), related online interfaces (including, e.g., mobile apps and web portals), and related accessories (e.g., remote temperature sensors), upon importation in the United States, and these connections provide additional "smart" features beyond the capabilities of a traditional thermostat. Further, Defendant's smart thermostat systems are "smart" because they support and are marketed as providing features to end users that analyze thermostat and HVAC system data gathered by the smart thermostat systems.

13.     Defendant's smart thermostats are installed in the customer's home, and they connect to Defendant's related servers, cloud systems, and remote interfaces. The smart thermostat

devices, such as Nest Thermostat, Nest Learning Thermostat Third Generation, or Nest Thermostat E, constitute the "frontend" of the smart thermostat system, smart HVAC system, and/or smart HVAC control system. Such smart thermostat devices can be programmed using the servers and the network maintained by Defendant and which form the "backend" for the smart thermostat. Such smart thermostat systems can be programmed remotely with a web or mobile application offered by Defendant. The web or mobile application communicates with the smart thermostat via computer servers or data centers managed by Defendant, who sells and imports the smart thermostat. Defendant allows an end user to use a web or mobile application on a mobile phone, tablet, laptop, or other computing device to control the smart thermostat systems, such as by adjusting temperature settings. Defendant's smart thermostat systems also communicate data using the network. For example, Defendant's smart thermostat systems send and receive temperature data and/or temperature settings using the network.

14.     Defendant's Accused Products, when used in the ordinary manner as advertised and encouraged by Defendant, offer many "smart" features not possible with a traditional thermostat. For example, Defendant's Accused Products have features for smarter scheduling, which can save homeowners energy and improve their comfort. As another example, Defendant's Accused Products have features for HVAC performance monitoring, which can alert homeowners about problems with the HVAC system.  Defendant's Accused Products also allow Defendant to partner with energy companies, such as Austin Energy, to provide additional energy features and benefits to customers. Defendants and/or these energy partners offer rebates and energy savings benefits to customers who participate in "smart" energy savings features of the Accused Products. Defendant collaborates with and maintains partnerships with energy companies such as Austin Energy. The practice of technology protected by EcoFactor's patents is directly relevant to Defendant's

activities in providing such benefits to customers in this District.

15.     Defendant's Accused Products are designed and specially made and adapted to infringe claims of the Asserted Patents and to embody a material part of the claimed inventions. The Accused Products are installed and used in the United States according to Defendant's design and instructions. Defendant has knowledge as well as notice of its infringement of each asserted patent at least as of October 21, 2019. Defendant knowingly induces and encourages the use of the Accused Products in the United States in a manner that infringes the asserted claims of the Asserted Patents. Defendant infringes the Asserted Patents directly, through making, using, selling, and/or offering for sale the Accused Products. Defendant also infringes the Asserted Patents indirectly, both for example through contributory infringement as well as through induced infringement. The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,423,322

16.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

17.     Plaintiff owns all rights, title, and interest in United States Patent No. 8,423,322, titled "System and method for evaluating changes in the efficiency of an HVAC system." The '322 Patent was duly and legally issued by the United States Patent and Trademark Office on April 16, 2013. Plaintiff is the owner and assignee, possessing all substantial rights, to the '322 Patent. A true and correct copy of the '322 Patent is attached as Exhibit 1.

18.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-14 of the '322 Patent.  The definition of "Accused Products" may additionally include related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, and/or related accessories, such as Nest Temperature Sensor.

19.     The infringement of the '322 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

20.     Defendant also knowingly and intentionally induces infringement of claims of the '322 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '322 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '322 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '322 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '322 Patent, thereby specifically intending for and inducing its customers to infringe the '322 Patent through the customers' normal and customary use of the

Accused Products.

21.     Defendant has also infringed, and continue to infringe, claims of the '322 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '322 Patent, in violation of 35 U.S.C. § 271(c).

22.     The Accused Products satisfy all claim limitations of claims of the '322 Patent. A claim chart comparing claim elements of the '322 Patent to representative Accused Products is attached as Exhibit 2.

23.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '322 Patent pursuant to 35 U.S.C. § 271.

24.     As a result of Defendant's infringement of the '322 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

25.     Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '322 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

26.     Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '322 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '322 Patent. Plaintiff is therefore entitled to enhanced damages.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,131,497

27.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

28.     Plaintiff is the owner and assignee of United States Patent No. 8,131,497, titled "System and method for calculating the thermal mass of a building." The '497 patent was duly and legally issued by the United States Patent and Trademark Office on March 6, 2012. Plaintiff is the owner and assignee, possessing all substantial rights, to the '497 Patent. A true and correct copy of the '497 Patent is attached as Exhibit 3.

29.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-12 of the '497 Patent.   The definition of "Accused Products" may additionally include related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, and/or related accessories, such as Nest Temperature Sensor.

10

30.    The infringement of the '497 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

31.    Defendant also knowingly and intentionally induces infringement of claims of the '497 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '497 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '497 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '497 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '497 Patent, thereby specifically intending for and inducing its customers to infringe the '497 Patent through the customers' normal and customary use of the Accused Products.

32.    Defendant has also infringed, and continue to infringe, claims of the '497 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '497 Patent, in violation of 35 U.S.C. § 271(c).

33.     The Accused Products satisfy all claim limitations of claims of the '497 Patent. A claim chart comparing claim elements of the '497 Patent to representative Accused Products is attached as Exhibit 4.

34.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '497 Patent pursuant to 35 U.S.C. § 271.

35.     As a result of Defendant's infringement of the '497 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

36.     Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '497 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

37.     Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '497 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '497 Patent. Plaintiff is therefore entitled to enhanced damages.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,498,753

38.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

39.     Plaintiff is the owner and assignee of United States Patent No. 8,498,753 titled "System, method and apparatus for just-in-time conditioning using a thermostat." The '753 Patent was duly and legally issued by the United States Patent and Trademark Office on July 30, 2013. Plaintiff is the owner and assignee, possessing all substantial rights, to the '753 Patent. A true and correct copy of the '753 Patent is attached as Exhibit 5.

40.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, and related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-20 of the '753 Patent.  The definition of "Accused Products" may additionally include related accessories, such as Nest Temperature Sensor.

41.     The infringement of the '753 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

42.     Defendant also knowingly and intentionally induces infringement of claims of the '753 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '753 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '753 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website)

to use the Accused Products in ways that directly infringe the '753 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '753 Patent, thereby specifically intending for and inducing its customers to infringe the '753 Patent through the customers' normal and customary use of the Accused Products.

43.     Defendant has also infringed, and continue to infringe, claims of the '753 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '753 Patent, in violation of 35 U.S.C. § 271(c).

44.     The Accused Products satisfy all claim limitations of claims of the '753 Patent. A claim chart comparing claim elements of the '753 Patent to representative Accused Products is attached as Exhibit 6.

45.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '753 Patent pursuant to 35 U.S.C. § 271.

46.     As a result of Defendant's infringement of the '753 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with

interest and costs as fixed by the Court.

47.     Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '753 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

48.     Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '753 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '753 Patent. Plaintiff is therefore entitled to enhanced damages.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 10,018,371

49.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

50.     Plaintiff is the owner and assignee of United States Patent No. 10,018,371, titled "System, method and apparatus for identifying manual inputs to and adaptive programming of a thermostat." The '371 Patent was duly and legally issued by the United States Patent and Trademark Office on July 10, 2018. Plaintiff is the owner and assignee, possessing all substantial rights, to the '371 Patent. A true and correct copy of the '371 Patent is attached as Exhibit 7.

51.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and

Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, and related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-24 of the '371 Patent.  The definition of "Accused Products" may additionally include related accessories, such as Nest Temperature Sensor.

52.     The infringement of the '371 Patent is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

53.     Defendant also knowingly and intentionally induces infringement of claims of the '371 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Defendant has had knowledge of the '371 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '371 Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '371 Patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '371 Patent, thereby specifically intending for and inducing its customers to infringe the '371 Patent through the customers' normal and customary use of the Accused Products.

54.     Defendant has also infringed, and continue to infringe, claims of the '371 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent,

and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '371 Patent, in violation of 35 U.S.C. § 271(c).

55.     The Accused Products satisfy all claim limitations of claims of the '371 Patent. A claim chart comparing claim elements of the '371 Patent to representative Accused Products is attached as Exhibit 8.

56.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured Plaintiff and is liable for infringement of the '371 Patent pursuant to 35 U.S.C. § 271.

57.     As a result of Defendant's infringement of the '371 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

58.     Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '371 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

59.     Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '371 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '371 Patent. Plaintiff is therefore entitled to enhanced

damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a.      A judgment in favor of Plaintiff that Defendant has infringed, literally and/or under the doctrine of equivalents, the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

b.      A judgment in favor of Plaintiff that Defendant's infringement of the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent has been willful and egregious under 35 U.S.C. § 284;

c.      A permanent injunction prohibiting Defendant from further acts of infringement of the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

d.      A judgment and order requiring Defendant to pay Plaintiff its damages, enhanced damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

e.      A judgment and order requiring Defendant to provide accountings and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

f.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

g.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: January 10, 2022                    Respectfully submitted,

                                           /s/ *Reza Mirzaie*
                                           Reza Mirzaie
                                           Marc A. Fenster
                                           James N. Pickens
                                           Kristopher R. Davis
                                           Minna Y. Chan
                                           Adam S. Hoffman
                                           Jason M. Wietholter
                                           RUSS AUGUST & KABAT
                                           12424 Wilshire Boulevard 12th Floor
                                           Los Angeles, California 90025
                                           Tel: 310-826-7474
                                           Fax: 310-826-6991
                                           rmirzaie@raklaw.com
                                           mfenster@raklaw.com
                                           jpickens@raklaw.com
                                           kdavis@raklaw.com
                                           mchan@raklaw.com
                                           ahoffman@raklaw.com
                                           jwietholter@raklaw.com
                                           rak_ecofactor@raklaw.com

                                           Matthew D. Aichele
                                           RUSS AUGUST & KABAT
                                           800 Maine Ave SW, Suite 200
                                           Washington, DC. 20024
                                           Telephone: (202) 664-0623
                                           maichele@raklaw.com

                                           ***Attorneys for Plaintiff EcoFactor, Inc.***